[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of parental rights concerning four minor children: Daniel D., Dorcas D., Malachi D. and Miracle D. The Department of Children and Families (hereafter DCF) filed TPR petitions with the court on March 11, 1998.
The respondent, Barbara D., is the biological mother of each child. The children's biological father, Robert D., died in September 1997.
The children Daniel D. and Dorcas D. are twins, and were born on November 25, 1991. Their siblings, Malachi D. and Miracle D., are also twins, and were born on August 14, 1993.
DCF invoked a 96-hour administrative hold on all the children on May 30, 1996, and the court granted ex parte orders vesting each child's temporary custody with the agency on June 3, 1996. Daniel D., Dorcas D., Malachi D. and Miracle D. were committed to CT Page 65 DCF as neglected children at a hearing before the Superior Court for Juvenile Matters on October 24, 1996. Those initial 12-month commitments were extended by the court, on October 24, 1997, and on October 24, 1998.
Pursuant to C.G.S. 17a-112(c), DCF alleged four grounds for termination against Barbara D: abandonment, parental failure to rehabilitate, lack of an ongoing parent-child relationship, and parental failure to rehabilitate by a party whose parental rights with respect to another child less than seven years of age have previously been terminated.[1] With respect to the first three counts, the petitioner also alleged that each ground for termination had existed for not less than one year prior to the date when the petitions were filed.
The termination of parental rights trial commenced on October 19, 1998. The trial continued on November 9, 1998 and on November 16, 1998, when all sides rested. The respondent mother was present in court and was represented by her court-appointed attorney on each of these days. The petitioner, and the minor children, were represented by their respective counsel throughout the trial.
DCF introduced seven full exhibits into evidence during the trial, and elicited testimony from the following witnesses:
1. Lois McCoy, DCF social worker;
2. Louise Robinson, services coordinator, South Park Inn;
3. Marian Howard, DCF social worker.
The respondent, Barbara D., placed one exhibit in evidence, testified on her own behalf, and also introduced the testimony of six other witnesses:
1. Guy Morgan, DCF social worker;
2. Tweedale Alston, counselor, Blue Hills Clinic;
3. Jeanine Sullivan, social worker, Blue Hills Clinic;
4. Claude Grazia, social worker, Substance Abuse Treatment Unit;
5. Sylvia Reid, Esq., former counsel for the late father; CT Page 66
6. Laurie Bowler, staff member, South Park Inn.
The attorney for the minor children actively participated in every aspect of this trial, but did not offer evidence or testimony.
On December 11, 1998, after the trial had concluded, counsel for Barbara D. filed a motion to reopen testimony in the trial. The motion claimed that Claude Girazia, the respondent's therapist at the Substance Abuse Treatment Unit (hereafter SATU), had testified about the mother's mental health and substance abuse diagnoses at trial based upon his assumption, and not based upon an actual diagnosis. The respondent's motion further indicated that Jackie T., who had been mentioned at trial as a proposed adoptive parent, no longer wished to adopt the children. After hearing on this motion, the court ruled that Barbara D. could reopen the trial to recall Mr. Grazia for further testimony concerning the psychiatric and substance abuse diagnoses. The court also ruled that the respondent could introduce updated dispositional evidence about Jackie T.'s status as a placement resource.
The trial was reconvened on January 8, 1999, at which time counsel for Barbara D. recalled Mr. Grazia.[2] Counsel for DCF and the minor children also attended, and each attorney participated in the further examination of this witness. Although no testimony was received on this issue, the parties also stipulated for the record on January 8th that Jackie T., a relative who had previously been under consideration as an adoptive parent for the children, was no longer a possible permanent placement resource.
 FACTUAL FINDINGS
CT Page 67
The court has carefully considered all of the evidence and testimony, and finds that the following facts were proven by clear and convincing evidence at trial:
Daniel and Dorcas are seven years old, and Malachi and Miracle are five years of age. The four children have been in DCF foster care for more than two and one half years.
Barbara D., who turned 44 years old on December 20, 1998, has a 25-year history of alcohol abuse, and a long-standing problem with the illegal use of heroin and cocaine. (Testimony of Jeanine Sullivan and Petitioner's Exhibit 1, Page 3).
On September 28, 1998, the mother began treatment at the Substance Abuse Treatment Unit (SATU) in New Haven. (Testimony of Claude Grazia). This is a six-month, outpatient program where the mother could receive treatment for mental health and substance abuse issues. Claude Grazia, a social worker, is the respondent's primary therapist at SATU. (Testimony of Claude Grazia). When he first testified in November 1998, Mr. Grazia had seen the respondent three times. Barbara D. submitted to three drug screens, and four breathalyser tests for alcohol, at SATU. Two of the drug tests, and all of the alcohol tests, were negative. (Testimony of Claude Grazia). Barbara D.'s drug test on September 28, 1998 was positive for opiates and amphetamines. The subsequent tests on October 20, 1998 and October 30, 1998 were negative for illegal drugs. (Testimony of Claude Grazia). Based on the negative results of the other tests, Dr. Grazia opined that Barbara D.'s alcohol and opiate dependency is in remission, and that the respondent has maintained her sobriety since September 28, 1998. (Testimony of Claude Grazia).
When he testified in November, Mr. Grazia indicated that Barbara D. had the dual diagnosis of schizo affective disorder, and alcohol and opiate dependence (in remission). When he testified again in January 1999, Mr. Grazia stated that the mother's diagnosis was "rule out" schizo affective disorder, and alcohol and opiate dependence (in remission). The "rule out" diagnosis means that although there is some indication that Barbara D. suffers from the disorder, the diagnosis is not definitive, and those who treat her should attempt to determine if it can be ruled out. Mr. Grazia explained in January that when the mother began treatment at SATU last September, she was under prescriptions from a different treatment facility for a small dosage of anti-psychotic medication, and for two types of CT Page 68 anti-depressants. Based on those prescriptions, Mr. Grazia concluded that the mother suffered from schizo affective disorder. However, he also testified on January 8th that with the exception of the prescriptions, there was nothing in Barbara D's prior medical or psychiatric records which supported the diagnosis of schizo affective disorder. In January, Mr. Grazia also testified that SATU continued the prescriptions for the anti-psychotic and anti-depression medications, and still regards the respondent as a "dual diagnosis"[1] patient.
During cross examination on January 8th, Mr. Grazia indicated that he had not seen Barbara D. for treatment since November 13, 1998. He has received telephone calls from the mother, who reportedly went to North Carolina for a period of time after a death in her family. The respondent has now returned to Connecticut, and has called the therapist expressing the desire to resume her treatment as a patient at SATU. However, she had not done so as of January 8, 1999. Based on Mr. Grazia's most recent testimony, the court finds the respondent's mental illness (if any) to be secondary to her long-standing substance abuse problems. Based on all of the testimony at trial — including the evidence: (1) that Barbara D. relapsed by using illegal drugs on or about September 28, 1998; (2) that Mr. Grazia only treated the respondent on three occasions since that date; and (3) that the respondent has not been receiving therapy at SATU for her chronic substance abuse since mid-November, 1998 — the court does not accept Mr. Grazia's opinion that the respondent's alcohol and drug dependency is in remission.
During her testimony at trial, the respondent attempted to explain the positive drug screen on September 28th by claiming that she had taken Tylenol medication with codeine for an illness. (Testimony of Barbara D.) The court did not find the respondent's testimony to be credible. She was not able to provide SATU with evidence of a valid prescription for that medication. (Testimony of Claude Grazia). Furthermore, her explanation did not account for the presence of amphetamines, a drug which the respondent has previously abused.[2] The court finds that on or near September 28, 1998, Barbara D. illegally used opiates and amphetamines.
Barbara D.'s substance abuse has been recurrent, and, unfortunately, she has been unsuccessful in a number of prior attempts at treatment. As a result of her substance dependency, the mother has been homeless for protracted periods of time CT Page 69 during the past several years. She has also demonstrated a long-standing inability to properly care for her children. Barbara D. consented to the termination of her parental rights with respect to her first child, who was born in 1971. (Petitioner's Exhibit 1, Page 6). She voluntarily transferred guardianship of her next two children, who were born in 1973 and 1980. (Petitioner's Exhibit 1, Page 6).
DCF filed neglect petitions on Daniel, Dorcas, Malachi and Miracle on December 4, 1995, (Petitioner's Exhibit 1, Page 2), but the children remained in the respondent's care. The allegations then were that these children were being denied proper care and attention physically, and were being permitted to live under conditions, circumstances or associations injurious to their well-being. (Petitioner's Exhibit 1, Page 2). Following a subsequent referral in May of 1996 from a homeless shelter staff member, who claimed that the children were at risk, DCF placed the children in foster care. (Petitioner's Exhibit 1, Pages 3 and 4). They were committed to DCF on October 24, 1996, and have remained in state custody continuously since then. Barbara D. did not attend the October 24, 1996 commitment hearing. (Testimony of Lois McCoy). Court-approved expectations were set for both parents at that hearing, and DCF social worker Lois McCoy told Barbara D. on an ongoing basis about the steps which she needed to take in order to achieve reunification. (Testimony of Lois McCoy, and Petitioner's Exhibit 2, Page 2).
Barbara D. was incarcerated shortly after the children were committed to DCF. She was in jail from November 1996 until January 1997. (Testimony of Barbara D.) Louise Robinson, a service coordinator at the South Park Inn shelter for homeless persons, estimated that the mother stayed at the shelter on nine separate occasions between March 1997 and June 1998. (Testimony of Louise Robinson). The respondent admitted to Ms. Robinson that she had been using illegal drugs prior to each shelter stay. (Testimony of Louise Robinson). Ms. Robinson advised Barbara D. that she needed long-term residential drug treatment. Ms. Robinson drove the respondent to the Stonington Institute, a residential drug treatment facility, on March 11, 1997[3]. (Testimony of Louise Robinson and Petitioner's Exhibit 3). Stonington Institute offers long term, residential substance abuse therapy to its patients, who can remain in treatment there for as long as two years. (Testimony of Louise Robinson). The admission summary from Stonington Institute indicates that Barbara D. claimed to have stopped drinking in the fall of 1996, CT Page 70 but used marijuana while in jail, and had consumed shots of liquor and $50 worth of cocaine on March 10, 1997, the day prior to her admission at the facility. (Petitioner's Exhibit 3, Page 1). The respondent's diagnoses upon admission included alcohol dependence, cocaine dependence, and heroin dependence. (Petitioner's Exhibit 3, Page 2).
Barbara D. was administratively discharged from Stonington Institute on March 25, 1997. (Petitioner's Exhibit 3, Page 3). She did not complete the program there, and returned via a taxi cab to Hartford on March 24, 1997. Barbara D. re-entered the South Park Inn shelter after leaving Stonington Institute. (Testimony of Louise Robinson).
During her testimony at trial, Barbara D. offered various reasons why she left Stonington Institute. These included conflicts with another patient whom the respondent knew from the "streets", the indifference of Stonington staff to the respondent's conflicts with that person, the illness of respondent's husband, and the fact that she "did not like" the facility. (Testimony of Barbara D.) The court does not find Barbaras D.'s explanations to be credible, nor a justification for rebuffing the long-term treatment which she badly needed. Rather, the court finds that the respondent's premature departure from this long-term treatment facility was caused by her addiction to drugs and alcohol, and her lack of amenability to therapy at that time. The discharge summary indicated that Barbara D. attended AA meetings while at Stonington but "got nothing out of them" and that she did not "understand her relapse patterns." (Petitioner's Exhibit 3, Page 3).
The respondent was admitted to the Blue Hills Clinic in Hartford on May 21, 1997 and was discharged from there on July 7, 1997 (Petitioner's Exhibit 5, Page 1 and testimony of Barbara D.) While at Blue Hills Clinic during this period, the respondent visited twice with her four children. (Testimony of Barbara D.).
There was conflicting testimony at trial concerning the frequency of respondent's visitation with her children while they have been in state custody. Barbara D. testified that she visited Daniel, Dorcas, Malachi and Miracle "at least 15 times" between the date of their removal in 1996 and the date of this trial. Social Worker Lois McCoy testified that the mother had been offered weekly visitation during 1996, but that DCF subsequently stopped offering weekly visits to the respondent in 1997 due to CT Page 71 her inconsistency in visiting the children. The mother's whereabouts were unknown to DCF for a period of between six and eight weeks after Barbara D. left the Stonington Institute in March 1997. When the respondent failed to visit for extended periods of time, the children were sad and would inquire about her whereabouts. (Testimony of Lois McCoy).
DCF transported the children to see their mother at Blue Hills clinic twice when she was a patient there in the spring and summer of 1997. (Testimony of Lois McCoy). The children visited with the respondent at DCF in August 1997. During this visit, Barbara D. became agitated and angry with Ms. McCoy, because the worker offered the children candy. (Testimony of Lois McCoy). The children were brought to the hospital to visit their father during the final stages of his illness, and DCF social worker Guy Morgan took the children to their father's funeral in September 1998. Barbara D. visited with Daniel, Dorcas, Malachi and Miracle on these occasions. (Testimony of Lois McCoy and Guy Morgan).
DCF social workers Morgan and McCoy testified that the children were happy to see their mother, and that Barbara D. interacted warmly and appropriately with the children, during the visits they supervised.
Ms. McCoy believes that the children saw their mother four times between March 1997 and the date of the father's funeral in September 1997. She testified that from September 1997 until the date the TPR petitions were filed (March 11, 1998), the respondent did not visit the children at all.
Viewed in its totality, this evidence established that Barbara D.'s contacts with her four children were sporadic during the 30 months they have been in foster care. The court further finds that the primary causes of the respondent's lack of involvement with the children were her substance abuse, homelessness, and inability or unwillingness to work with DCF and substance abuse treatment providers.
The respondent was readmitted to the Blue Hills program for residential substance abuse treatment on July 8, 1998. The discharge summary indicates that prior to her admission, Barbara D. "reported heavy daily drinking." (Petitioner's Exhibit 5, Page 1). She was diagnosed there with cocaine dependence, alcohol dependence, and opiate dependence in remission. (Petitioner's Exhibit 5, Page 2.) Both the discharge summary, and the testimony CT Page 72 of Tweedale Alston, a drug and alcohol counselor at Blue Hills, indicated that the respondent participated well in the program and made gains while there. The discharge summary, which was signed by Program Director Steven Fisher, noted:
 "It was the determination of the treatment team at the Residential Program that Barbara had made sufficient gains on the goals identified and her treatment plan so as to be able to continue treatment in a less restrictive setting.
 She pursued admission to several halfway houses, transitional living facilities and shelters plus care programs but was turned down by these programs usually with the observation that emotional functioning seemed fragile. Barbara was accepted into Oxford House in New Haven. She was discharged to that house on 9-12-98. She was referred to Yale New Haven Hospital for follow up with substance abuse treatment and medication evaluation and renewal. She planned her return to church activities to provide for spiritual development and support her use of free time. She has family in the area that is supportive of her recovery. She was advised to find other productive activities as well as associations with recovering individuals or persons whom do not use drugs." (Petitioner's Exhibit 5, Page 4).
Barbara D. stayed at Oxford House from September 12, 1998 until mid-October 1998. An affidavit from Mary Musso, a social worker at Yale-New Haven Hospital who is assisting the respondent, indicated that "After [Barbara D.] reported another resident for using drugs, she was treated very poorly by other residents; at the end, being voted out of the house." (Mother's Exhibit A). Since leaving Oxford House, the respondent has resided in a group home facility in New Haven and has applied for housing. (Mother's Exhibit A). She began the treatment with SATU referred to above, and received supportive services from Ms. Musso, who is impressed with the respondent's motivation. (Mother's Exhibit A). As noted above, Barbara D. has not treated at SATU during the period of time from November 13, 1998 through January 8, 1999. (Testimony of Claude Grazia)
 ADJUDICATION (Based on evidence through March 11, 1998)
The court finds, based upon clear and convincing evidence CT Page 73 presented at trial, that DCF made reasonable efforts to locate Barbara D., and to reunify her with Daniel, Dorcas, Malachi and Miracle. These efforts included casework services, visitation, foster care for the children and referrals for substance abuse treatment. Those efforts were augmented by the repeated attempts of community-based substance abuse treatment providers and homeless shelter facilities to engage Barbara D. in therapy, and other services crucial to her reunification with the children.
With respect to the three remaining counts contained in each petition for termination of parental rights, the court makes the following adjudicatory findings:
1. Abandonment (C.G.S. 17a-112(c)(A): A court may find this non-consensual ground for termination of parental rights when it determines that the child ". . . has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." C.G.S. 17a-112(c)(A) Under the statute in effect when this TPR petition was filed, the abandonment must have occurred for an extended period of time, not less than one year unless the one year requirement is waived by the court to promote the best interests of the child. C.G.S. 17a-112(d)(1). Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re Juvenile Appeal (Docket No. 9489),183 Conn. 11, 14, 438 A.2d 801 (1981).
Barbara D. did not visit the children for six months prior to the date the termination petitions were filed. Although the petitioner and the respondent disagree as to the frequency of the mother's contacts, the court finds the Barbara D.'s visits with the children were sporadic. By her own admission, the respondent visited the children approximately 15 times during the two and one-half years that Daniel, Dorcas, Malachi and Miracle have been in state custody. The respondent's failure to visit the children for extended periods of time was upsetting to them. (Testimony of Lois McCoy). This inconsistency, and the adverse impact which it had upon the children, ultimately compelled DCF to suspend Barbara D.'s visitation rights.
Mary Musso, a social worker at Yale-New Haven Hospital, wrote in an affidavit to the court that Barbara D. "speaks lovingly of her children." (Mother's Exhibit A). The court accepts this CT Page 74 representation as true, and the court also finds that the respondent and her children interacted warmly during the visits which were supervised by DCF. But despite this affection, the four children have languished in foster care for two and one-half years. During this 30-month period, the respondent ignored numerous opportunities to see the children, and to correct the problems — such as her addiction and homelessness — which necessitated their removal from her care.
DCF has proven by clear and convincing evidence that Barbara D. failed to maintain a reasonable degree of interest, concern and responsibility for Daniel, Dorcas, Malachi and Miracle. The court also finds, based upon clear and convincing evidence, that this ground for termination of parental rights existed for a period of time longer than one year prior to March 11, 1998.
2. Parental Failure to Rehabilitate (C.G.S. 17a-112(c)(B):
This statutory ground for termination of parental rights applies in those cases where "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. C.G.S. 17a-112(c)(B).
As used in this statute, the term "personal rehabilitation" has been defined in Connecticut case law to mean the restoration of a parent to his or her former constructive and useful role as a parent. (Quotation marks omitted). In re Migdalia M.,6 Conn. App. 194, 203, 504 A.2d 532 (1986); In re Juvenile Appeal,1 Conn. App. 463, 473 A.2d 795, cert denied, 193 Conn. 802,474 A.2d 1259 (1984). The statute does not require parents "to be able to assume full responsibility for a child, without the use of available support programs." (Internal citation omitted). Inre Jessica M. 49 Conn. App. 229, 240 (1998).
Barbara D. took some positive rehabilitative steps last summer and fall. She did well in residential treatment at the Blue Hills Clinic in July, and subsequently started outpatient substance abuse therapy treatment at the SATU unit on September 28th. She also secured housing at a group residential facility, and a support system which included her church, SATU and Ms. Musso, the social worker at Yale-New Haven Hospital. CT Page 75
As noted above, however, the court is required by statute to determine whether or not Barbara D. has achieved a degree of personal rehabilitation sufficient to encourage the belief that the respondent could assume a responsible position in the lives of her children within a reasonable time. In making this determination, the court is also mandated by the statute to consider the ages and needs of the children.
The four children were committed to DCF's custody, as neglected children, on October 24, 1996. They have been in foster care for more than 30 months. This represents a substantial portion of their young lives, since Daniel and Dorcas are seven years old, and Malachi and Miracle are five.
The totality of the evidence proves that Barbara D.'s present degree of personal rehabilitation does not indicate that she could assume a responsible parental role in the lives of the four children within a reasonable time. The respondent's recovery from serious drug and alcohol abuse is, at best, tentative. Barbara D. admitted to heavy daily drinking prior to her admission at Blue Hills Clinic last July. She subsequently relapsed by using opiates and amphetamines on or about September 28, 1998, which was just three weeks prior to the commencement of this trial. The respondent had only participated in three treatment sessions with her therapist at SATU as of the date trial commenced. Unfortunately, she stopped treating at SATU on November 13, 1998, and had not returned there as of January 9, 1999.
Additionally, as of the date when the trial first ended last November, Barbara D. had only resided in her present group living facility since mid-October 1998, and still lacked housing for the children at that time.
Although witnesses for the mother opined that she could become competent to parent if she received ongoing mental health and drug treatment, and obtained adequate housing and income, the record in this case is devoid of any clear-cut indication as to when Barbara D. will successfully accomplish these goals. Given the extensive amount of time which has already elapsed since the children were committed to DCF, and given each child's age and need for a stable home life, the court finds that it would be inappropriate to delay permanency planning for them any longer. DCF proved has proven parental failure to rehabilitate in this matter by clear and convincing evidence. The petitioner also established by clear and convincing proof that this ground for CT Page 76 termination has existed for more than one year prior to the date when this action commenced.
3. Parental Failure to Rehabilitate/Prior Termination(C.G.S. 17a-112(c)(E): This portion of the statute indicates that parental rights may be terminated where:
 "the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." C.G.S. 17a-112(c)(E).
All of the subject children in this case were less than seven years of age when the termination petitions were filed (Petitioner's Exhibit 1, Page 1) and Barbara D. previously agreed to the termination of her parental rights with respect to her oldest child, who was born in 1971. (Petitioner's Exhibit 1, Page 5). However, C.G.S. 17a-112(c)(E) specifically requires that the prior termination be "pursuant to a petition filed by theCommissioner of Children and Families." (Emphasis added). The court interprets this statutory language to specifically exclude prior termination proceedings in Connecticut which were initiated by parties other than the DCF Commissioner[4], and prior terminations which were granted in jurisdictions outside of the State of Connecticut.
In the case at bar, DCF did not introduce any evidence (such as certified court records, or transcripts of judicial proceedings) which indicated where, or by whom, the prior termination proceeding was filed. Additionally, there was evidence that the earlier TPR may have occurred in Washington, D.C. The DCF social study which was introduced into evidence stated that:
 "[the respondent] voluntarily terminated her parental rights to her first child, [Leslie B.] (DOB 5/2/71), when she was living in Washington, D.C."(Petitioner's Exhibit 1, Page 6).
CT Page 77
The social study also indicated that Barbara D. "was born and raised in Washington, D.C." and that "she came to Connecticut in 1990." (Petitioner's Exhibit 1, Page 3). Hence, it is more likely than not that the termination of the respondent's parental rights as to her firstborn child occurred in Washington, D.C., particularly since that child would have attained the age of majority by the time Barbara D. became a resident of this state.
Based on all of the forgoing, the court finds that DCF failed to prove by clear and convincing evidence one of the statutory elements required by 17a-112(c)(E) — namely, that the parent's prior termination of parental rights was pursuant to a petition filed by the Commissioner of Children and Families. Accordingly, this count of the termination petition is hereby dismissed.
 DISPOSITION
During the dispositional phase of this proceeding, DCF must also prove by clear and convincing evidence that a termination of Barbara D.'s parental rights would be in the best interests of each child.
Daniel, Dorcas, Malachi and Miracle have now been in foster care for more than two and one half years. They currently reside together in the same foster home. The DCF social study, which was prepared in March 1998 noted:
 "The . . . children have lost their personal attachment to their mother. The children have become attached to their foster parents far beyond their attachment to their mother. Daniel and Dorcas have stated to this social worker that they do not wish to return to the custody of their mother." (Petitioner's Exhibit 1, Page 6).
Unfortunately, the current foster parents have indicated that they will not be able to adopt the children. (Testimony of Marian Howard). DCF social worker Marian Howard testified at trial that the petitioner believes the children should be raised together. She indicated that DCF's long-term plan is termination of parental rights and adoption of the children, hopefully by one family. The social worker expressed the opinion that adoption would be in the best interests of Dorcas, Daniel, Malachi and Miracle. The court accepts Ms. Howard's expert opinion as fact.
As noted above, DCF indicated during the initial portion of CT Page 78 the trial that a relative, Jackie T., had expressed interest in adopting all four children. It was subsequently learned that she will not be a placement resource. DCF indicated at trial that it had other contingency permanency plans. These include exploring the possible adoption of all four children by a relative in Waterbury. (Testimony of Marian Howard).
Despite the respondent's claim of recent advances in her rehabilitative efforts, the court has found, based upon clear and convincing evidence, that Barbara D.'s progress is not sufficient to engender the hope that she can resume a responsible parental role in the children's lives within a reasonable time. Because of this, the court finds that any further delay in permanency planning for these children would be detrimental to their best interests, inasmuch as each child needs the certainty and stability of a caring, permanent home.
Before this court may enter judgment in this matter, it is required by C.G.S 17a-112(e) to make and consider the following factual findings:
1. The court finds, based upon clear and convincing evidence, that DCF and other treatment providers offered timely, extensive and appropriate reunification services to Barbara D. These included treatment for substance abuse at the Institute of Living, Stonington Institute, Blue Hills Clinic and SATU; casework services; visitation services, and referrals to the Alcohol and Drug Recovery Center and the Wheeler Clinic.
2. The court finds, based upon clear and convincing evidence, that DCF made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980. as amended.
3. No court orders were entered in this case. Court-approved expectations were established for Barbara D. in connection with each child's case at the neglect commitment hearing on October 24, 1996. (Petitioner's Exhibit 2, Page 2). Although the respondent mother did not attend that hearing, the DCF social worker advised her about the steps which she needed to take in order to be reunited with her children.
4. The DCF social study, which was prepared on March 6, 1998, noted that the "Children are very attached to their foster parents and have stated that they love [the] foster parents more CT Page 79 than their own parents." (Petitioner's Exhibit 1, Page 4). Unfortunately, neither the current foster parents, nor Jackie T., a relative who had expressed interest in raising the children, will be able to adopt them. The DCF study also indicated that the four children ". . . have lost their personal attachment to their mother." (Petitioner's Exhibit 1, Page 9).
The court is mindful of the testimony of Guy Morgan and Lois McCoy concerning the positive interaction between the mother and children during contacts which the social workers supervised. The court accepts that evidence as fact, and finds that the children know their biological mother, and have positive feelings for her. However, in light of Barbara D.'s longstanding inability to care for her children, and her lack of sufficient rehabilitation over the past two and one half years, these findings do not cause the court to delay permanency planning for the children, or to find that termination would not be in their best interests.
5. Daniel and Dorcas were born on November 25, 1991. They are seven years old. Malachi and Miracle were born on August 14, 1993. They are five years old.
6. Based upon clear and convincing evidence presented at trial, which included, inter alia, specific evidence pertaining to the respondent's sporadic visitation of the children, her periodic homelessness, and her long-standing chemical dependency and inability to care for her children, the court finds that Barbara D. has not adjusted her circumstances, conduct and conditions to the degree that it is in the best interests of the children to return them to the mother's home in the foreseeable future.
7. DCF suspended Barbara D.'s visitation with the children in 1997 due to her prior inconsistency in visiting them. Based upon all of the evidence presented at trial, the court does not find that DCF's action was unreasonable. The court finds that no unreasonable act of any person or entity, and no adverse economic circumstance, prevented Barbara D. from maintaining a meaningful relationship with the children.
 JUDGMENT
Having previously found that DCF proved adjudicatory grounds for termination as to each child by clear and convincing evidence, and having made and considered the seven findings CT Page 80 required under C.G.S. 17a-112(e), the court further finds, based upon clear and convincing evidence, that it is in the best interests of each of these four children that the parental rights of the respondent be terminated.
Accordingly, the court hereby ORDERS that Barbara D.'s parental rights with respect to Daniel D., Dorcas D., Malachi D. and Miracle D. be, and hereby are, terminated. The court further orders that the Commissioner of the Department of Children and Families be appointed the statutory parent of these children for the purpose of placing them in adoption, or securing other appropriate permanent placement for them. Said Commissioner, or her designee, will file a written report as to the progress being made toward adoption with this court within 90 days of the date hereof. It is also ordered that DCF comply with all other state and federal laws and regulations concerning the requirement for future permanency planning as to each child.
Judgment may enter accordingly.
Dated at Hartford, Connecticut this 27th day of January 1999.
BY THE COURT:
Dyer, J.